# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF SOUTH CAROLINA

IN RE:

Cherette Lenora Jupiter,

Debtor.

C/A No. 06-00963-JW

Chapter 13

## ORDER CONFIRMING TERMINATION OF THE AUTOMATIC STAY

This matter comes before the Court upon a Request for an Order Confirming Termination of the Automatic Stay ("Request") filed by National City Home Loan Services, Inc. ("National City"). The Request was served on all creditors and parties in interest. National City seeks an order confirming termination of the automatic stay pursuant to 11 U.S.C. § 362(j)[1] and SC LBR 4001-1(d). Cherette Lenora Jupiter ("Debtor") filed an objection to the Request. Based upon the facts of the case and applicable law, this Court makes the following Findings of Facts and Conclusions of Law.[2]

## FINDINGS OF FACTS

1. On February 25, 2005, Debtor filed for relief under Chapter 13, Case No. 05-02247-W. This case was dismissed on January 18, 2006 for failure to make timely payments to the Chapter 13 Trustee.

2. On March 9, 2006, Debtor filed this case under Chapter 13 of the Bankruptcy Code, as revised by the Bankruptcy Abuse and Consumer Protection Act of 2005 ("BAPCPA"). See Pub L. No. 109-8 (2005) (codified in scattered sections of 11 U.S.C.).

---

[1] Further references to the Bankruptcy Code (11 U.S.C. § 101 et seq.) shall be made by section number only.

[2] To the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are also adopted as such.

3. BAPCPA amended the Bankruptcy Code to add § 362(c)(3)(A), which provides that the automatic stay of § 362(a) terminates thirty days after the petition date if a debtor had a case pending within the year prior to the debtor's current petition date and that previous case was dismissed. Debtor falls within the category of debtors covered by § 362(c)(3)(A).

4. Debtor filed a Motion to Extend the Automatic Stay ("Motion") as to all creditors pursuant to § 362(c)(3)(B). Objections to the Motion were filed by James M. Wyman, the Chapter 13 Trustee ("Trustee") and National City.

5. After a hearing on Debtor's Motion, the Court entered an order on March 31, 2006 denying the Motion because Debtor failed to meet her burden of proof under § 362(c)(3)(B) by failing to demonstrate that this case was filed in good faith by clear and convincing evidence.[3]

6. National City holds a first mortgage on Debtor's residence described as 5090 Westview Street, Charleston, South Carolina ("Property").

7. The Property is property of Debtor's bankruptcy estate pursuant to §§ 541(a)(1) and 1306.

8. Prior to the petition date in Debtor's first case, National City filed an action to foreclose its lien on the Property. This action was stayed by Debtor's bankruptcies.

9. On April 25, 2006, National filed the Request for an order confirming the termination of automatic stay, pursuant to 11 U.S.C. § 362(j) and SC LBR 4001-1(d).

---

[3] Although Debtor failed to demonstrate, by clear and convincing evidence, that this case was filed in good faith, the Court did not find that this case was not filed in good faith for purposes of § 1325. The Court has also not reached a conclusion as to whether this case or other cases may be confirmed if the automatic stay terminates under § 362(c)(3) or is not in effect pursuant to § 362(c)(4).

10. Debtor objected to the Request and contends that the termination of the automatic stay, pursuant to § 362(c)(3)(A), does not terminate the automatic stay of § 362(a) as to property of Debtor's estate.[4]

11. The Court entered an order on May 9, 2006, allowing Debtor, National City, and the Trustee to brief their positions in this matter. Each party submitted a proposed order.

## CONCLUSIONS OF LAW

At issue is the interpretation of § 362(c)(3)(A) and whether that section provides for a termination of the automatic stay or whether it only terminates the automatic stay as to particular property. Section 362(c)(3)(A) provides:

> (3) if a single or joint case is filed by or against debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b)-
>
> (A) the stay under subsection (a) <u>with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease *shall terminate with respect to the debtor*</u> on the 30th day after the filing of the later case ....

11 U.S.C. § 362(c)(3)(A) (emphasis added)

Courts have struggled to discern the meaning of this new subsection of § 362. See In re Paschal, 337 B.R. 274, 277 (Bankr. E.D.N.C. 2006) (stating that § 362(c)(3) is subject to multiple interpretations); In re Baldassaro, 338 B.R. 178, 182 (Bankr. D.N.H. 2006) (stating that § 362(c)(3) is "poorly written"); In re Charles, 332 B.R. 538, 541 (Bankr. S.D. Tex. 2005) (stating that these provisions "are, at best, particularly difficult to parse and, at worst, virtually incoherent").

---

[4] SC LBR 4001-1(d) allows the Court to consider the Request *ex parte*. Based upon the various interpretations of § 362(c)(3), the Court considers Debtor's objection to the Request in order to determine whether the automatic stay in fact terminates with respect to the Property.

3

National City contends that, because the automatic stay was not extended, it is entitled to complete its foreclosure of the Property because the stay terminated with respect to the Property pursuant to § 362(c)(3)(A). National City seeks an order pursuant to § 362(j)[5] to confirm that the automatic stay has in fact terminated with respect to the Property.[6]

Debtor and Trustee argue that the Property is protected by the automatic stay because § 362(c)(3)(A) does not terminate the automatic stay with respect to property of Debtor's estate but only terminates with respect to property of the Debtor. Because § 1306 broadly incorporates Debtor's pre-petition and post-petition property into Debtor's estate, presumably the only property that would be property of Debtor and not property of the estate is that property which has been abandoned or which is exempt or which is otherwise excluded from the definition of "property of the estate" pursuant to § 541(b) and (c)(2). See H.R. Rep. No. 595 (1977) (noting in the legislative history for § 362(a)(5) that property of the debtor is property acquired after the commencement of the case, property that is exempted, and property that does not pass to the estate). The Property falls into none of these categories but is rather property of the estate pursuant to §§ 541(a)(1) and 1306(a). Debtor and Trustee assert that the plain language of § 362(c)(3)(A) only provides that the stay of § 362(a) terminates with respect to debtor for an "action taken"[7] with respect to a debt or property securing a debt, but does not terminate as to the

---

[5] Section 362(j) provides: "On request of a party in interest, the court shall issue an order under subsection (c) confirming that the automatic stay has been terminated." 11 U.S.C. § 362(j). SC LBR 4001-1(d)(1) allows the Court to consider a motion under § 362(j) on an *ex parte* basis.

[6] National City also filed an application for the abandonment of the Property and moved for relief from the automatic stay. The Court will address National City's application for abandonment in a separate order. The motion for relief from the automatic stay is mooted by this order.

[7] The court in Paschal focused on the term "action" and found that the term is used for a pre-petition formal action, such as a judicial proceeding. See Paschal, 337 B.R. at 280. The court concluded, under this definition, that the stay would not terminate because there were no pre-petition actions taken against the debtor in that case. See id. at 275. In this case, National City commenced a pre-petition foreclosure action against Debtor, thus there is a pre-petition "action," as defined by Paschal, and under this logic the stay may terminate with respect to National City. But see, Jones, 339 B.R. at 365 (subsequently concluding in the same District that the stay does not terminate with respect to property of the estate even though the creditor commenced a pre-petition foreclosure action against the

4

Property because § 362(c)(3)(A) does not clearly reference termination with respect to property of Debtor's estate.[8]

The issue in this case has been discussed by other courts in published opinions. Each of these courts have concluded that the termination of the stay under § 362(c)(3)(A) does not terminate the stay with respect to property of the estate. See In re Jones, 339 B.R. 360 (Bankr. E.D.N.C. 2006) (concluding that the termination of the stay under § 362(c)(3)(A) causes the stay to terminate with respect to the debtor and property of the debtor but that the stay does not terminate with respect to property of the estate); In re Moon, 339 B.R. 668 (Bankr. N.D. Ohio 2006) (holding that the stay remains in place as to property of the estate if the stay terminates under § 362(c)(3)(A)); In re Johnson, 335 B.R. 805, 807 (Bankr. W.D. Tenn. 2006) (holding that the stay remains in effect as to property of the estate until a debtor's case is dismissed or debtor receives a discharge or the court orders otherwise); In re Bell, C/A No. 06-11115, 2006 WL 1132907 *2 (Bankr. D. Colo. 2006) (holding the stay remains in effect as to property of the estate after a termination of the stay under § 362(c)(3)(A)); but see, 3 COLLIER ON BANKRUPTCY at ¶ 362.06[3], at p. 362-84.11 (Lawrence P. King et al. eds., 15th ed. Revised 2005) (implying that the automatic stay terminates with respect to property of the estate if the property secures a debt of the debtor).

---

subject property). Determining precisely what is an "action" in every case may be a painstaking task and would appear to require the Court to engage in fact specific analysis for every creditor when determining whether it can confirm that the stay has terminated pursuant to § 362(j). It does not appear that Congress intended for the courts to engage in this inquiry given that Congress provided parties in interest with the summary procedure of § 362(j), which broadly allows any party in interest to obtain an order confirming that the automatic stay has terminated pursuant to § 362(c).

[8]    It appeared to be the understanding of the Debtor when she filed the petition that an extension of stay was necessary to protect the property of her estate because she filed the Motion to extend the stay as to all creditors. National City also evidently believed that its rights may have been effected by the Motion as it opposed the Motion. Trustee also filed a response to the Motion and his cross examination of Debtor indicated that Debtor had not met her burden of proof on the Motion.

The analysis in these cases centers around the disparity of language in § 362(c)(3)(A) compared to § 362(a), § 362(c)(1), and § 362(c)(4)(A). Section 362(c)(4)(A)(i), applicable when a debtor has had two or more cases dismissed in the year prior to the petition date, is worded more concisely than § 362(c)(3)(A) and it plainly provides that the automatic stay of § 362(a) does not come into effect upon the filing of a debtor's third bankruptcy case within a one year period.[9] Courts have noted that if Congress intended for § 362(c)(3)(A) to terminate all of the protections of the automatic stay that it could have included language similar to that used in § 362(c)(4)(A)(i) rather than using the language set forth in § 362(c)(3)(A). See Moon, 339 B.R. at 672 (citing Paschal, 337 B.R. at 278-279) (noting the contrast in language between the two sections and that § 362(c)(4)(A)(i) is broader than § 362(c)(3)(A)). One court asserts that in drafting different language for § 362(c)(3)(A) and § 362(c)(4)(A)(i), Congress intended to impose stiffer penalties on debtors who had multiple cases dismissed within the previous year. See In re Harris, C/A/ No. 05-81435, ___ B.R. ___, 2006 WL 1195396 *4 (Bankr. N.D. Ohio 2006).

In finding that § 362(c)(3)(A) terminates the stay only with respect to debtor and property of the debtor, the court in Jones noted that this interpretation is consistent with the characterization of prohibited acts under § 362(a), which, in multiple sections, seems to distinguish between acts against debtor and the property of the debtor, and acts against property of the estate. See Jones, 339 B.R. at 363-364 (discussing the different language used by Congress in § 362(a)); compare, 11 U.S.C. § 362(a)(4) (prohibiting an act to create, perfect, or

---

[9] Section 362(c)(4)(A)(i) provides:

> a single or joint case is filed by or against a debtor who is an individual under this title, and if two or more single or joint cases of the debtor were pending within the previous year but were dismissed, other than a case refiled under section 707(b), the stay under subsection (a) shall not go into effect upon the filing of the later case.

11 U.S.C. § 362(c)(4)(A)(i).

enforce a lien against property of the estate) with 11 U.S.C. § 362(a)(5) (prohibiting an act to create, perfect, or enforce a lien against property of the debtor to the extent that it secures a pre-petition claim). This distinction also appears in § 362(c)(1), which specifically addresses when the stay terminates with respect to property of the estate and when the stay terminates with respect to "any other act under subsection (a)."

Debtor's and Trustee's interpretation of § 362(c)(3)(A) has appeal because, as discussed in Moon, courts should presume that Congress acts intentionally and purposefully when Congress includes particular language in one section of a statue but omits it in another. Moon, 339 B.R. at 672 (citing Keen Corp. v. U.S., 508 U.S. 200, 208, 113 S.Ct. 2035 (1993)). It is true that the language used by Congress in § 362(c)(3)(A) is different from the language used in § 362(a), which refers both to actions against property of the estate and actions against a debtor and a debtor's property. Based on this distinction alone, the Court could conclude, as other courts have, that the automatic stay remains in effect in this case for property of the estate but terminates as to Debtor and property of Debtor. However, the Court declines to reach this conclusion because it believes that the statutory scheme of § 362(c) is intended to and, in fact, terminates the automatic stay with respect to the Property. See Jones, 339 B.R. at 363 (citing In re Coleman, 426 F.3d 719, 725 (4th Cir. 2005)) (holding that the Court should construe the language used within the broader context of the statute as a whole).

In the Fourth Circuit, the plain meaning of an unambiguous statute governs, barring exceptional circumstances. See Wachovia Bank, N.A. v. Schmidt, 388 F.3d 414, 416 (4th Cir. 2004). If a statute is ambiguous, the Court may resort to legislative history to determine the meaning of the statute. See U.S. V. Ron Pair Enters., Inc., 489 U.S. 235, 242, 109 S.Ct. 1026 (1989). Excepted from the plain meaning approach is when the application of a statute would produce a result demonstrably at odds with the intention of the drafters. See id.

To the extent that § 362(c)(3)(A) is unambiguous, the Court disagrees with a construction of this section that allows the stay to continue with respect to property of the estate. Under a plain meaning approach, the Court believes that the operative and controlling wording in § 362(c)(3)(A) is that the stay under subsection (a) "terminates." The Court construes the remaining language of "with respect to the debtor" to define which debtor is effected by this provision, with reference to § 362(c)(3). Thus, in a joint case, a "debtor" may not necessarily mean both debtors if one debtor did not have a case dismissed within the year prior to the current petition date. See e.g., In re Parker, 336 B.R. 678, 680-681 (Bankr. S.D.N.Y. 2006) (holding that the new provisions of § 362(c)(4) does not affect a co-filing spouse with no prior filings); The Hon. Eugene R. Wedoff, *The Automatic Stay and Serial Filings: How Courts Have Interpreted § 362(c)(3) and (4)*, ABI Consumer Bankruptcy Committee Newsletter, June 2006, at 7 (Vol. 4, No. 4) *available at* http://abiworld.net/newsletter/consumerbank/vol4num4 (noting that "with respect to the debtor" could be treated as surplusage or interpreted as limiting the termination of the automatic stay in a joint case to the co-debtor who had an earlier case dismissed). The Court finds § 362(c)(3)(A) lifts the automatic stay with respect to the category of debtor, defined by § 362(c)(3), including property of that debtor's estate. See 3 COLLIER ON BANKRUPTCY at ¶ 362.06[3], at pp. 362-84.11 - 362-84.12 (Lawrence P. King et al. eds., 15th ed. Revised 2005) (stating that the stay does not necessarily terminate with respect to a co-debtor). The automatic stay continues as to the joint debtor not effected by § 362(c)(3) or (c)(4).

This interpretation of § 362(c)(3)(A) is also consistent with other provisions of § 362 added by BAPCPA. See Coleman, 426 F.3d at 725 (holding that the Court should construe the language used within the broader context of the statute as a whole). Congress provided a summary method by which parties in interest may confirm that the stay is terminated through § 362(j). Section 362(j) allows a party in interest, without notice and a hearing, to receive an

order confirming that the automatic stay has terminated under § 362(c). See 11 U.S.C. § 362(j). This provision would be inconsistent with § 362(c)(3)(A), if it does not effect a wholesale termination of the stay, because § 362(j) does not carve out exceptions for property that remains protected by the stay but broadly and summarily allows parties to confirm that the stay has been terminated under § 362(c).

Furthermore, § 362(c)(3)(B) allows for any party in interest to move to extend the automatic stay as to all creditors if a hearing is held within thirty days of the petition date and if the moving party demonstrates that the current case was filed in good faith. In some cases, including this case, good faith must be demonstrated by clear and convincing evidence. Indeed, the Trustee, as a party in interest, can move to extend the stay if the Trustee believes that a debtor's assets are beneficial to the administration of the estate.[10] It seems illogical that Congress would enact a provision which both requires moving parties to meet a high burden of proof and which requires the courts to hear these matters on an expedited basis, only to have both the process and the end result meaningless and of no utility if property of the estate remains protected by the automatic stay, notwithstanding a termination of the automatic stay under § 362(c)(3)(A). See Harris, 2006 WL 1195496 *4 (noting the mortgage creditor's argument that, if a debtor's residence remains protected by the stay, the creditor could do little more than badger the debtor with phone calls and letters). In a chapter 13 setting, property of the estate encompasses nearly all of a debtor's valuable assets pursuant to § 1306. Unless § 362(c)(3)(A) effects a termination of the automatic stay for property of the estate, there would not appear to be a need to provide parties in interest with the right to move to extend the stay or a need to extend the stay as to all creditors. This Court would waste resources laboring over whether to extend

---

[10] In this case, the Trustee did not join in Debtor's motion to extend the automatic stay but has now aligned with the Debtor in seeking an order that acknowledging that the automatic stay still protects property of the estate.

9

the automatic stay even though such a motion would appear to be of no utility to a debtor if the majority's interpretation is correct. See id. at *5 (noting that the court's interpretation of § 362(c)(3)(A) provides little benefit to the mortgage creditor); Jones, 339 B.R. at 364 (noting that it is unlikely that anyone, other than the debtor, would seek an extension of stay if § 362(c)(3)(A) only terminates the stay "with respect to the debtor"); Johnson, 335 B.R. at 807 (stating that the court's decision to grant the debtor an extension of the automatic stay was "superfluous"). Despite the cryptic language used by Congress in § 362(c)(3)(A), the Court does not believe that Congress enacted this section, which both requires an extraordinary amount of work on the part of the moving parties and the courts, only to have no meaningful penalty if the stay is not extended. Such an interpretation is not consistent with the intent of Congress nor the new statutory scheme set forth in § 362(c)(3).

Evident in this process of analyzing the language of § 362(c)(3)(A) is that this new subsection is imperfectly drafted, may be subject to multiple interpretations, and therefore considered ambiguous, and, as discussed above, inconsistent with other provisions of § 362. See Baldassaro, 338 B.R. at 184 (noting that based on the inconsistent and incoherent language of § 362(c)(3), the effect of the section on the extent and duration of the automatic stay is not clear); Paschal, 337 B.R. at 277 (noting that §362(c)(3) would rarely apply to any debtor if literally construed because the section only literally applies to those debtors who have three cases pending within one calendar year, one of which has been dismissed and two of which are still pending and further noting that § 362(c)(3) may never apply, if read literally, because a debtor does not file a "case" but rather files a "petition"). The majority's approach fails to take into account the apparent ambiguities in this section and may produce a result at odds with the intention of the drafters. See Harris, 2006 WL 1195396 *4 ("[g]iven the curious way in which Congress chose to draft § 362(c)(3)(A), it is not clear what portion of the automatic stay is

terminated on the 30th day ...."). The Court therefore considers the legislative history of § 362(c)(3)(A) to account for these acknowledged ambiguities and to determine if this opinion produces a result demonstrably at odds with the intention of the drafters. See Ron Pair, 489 U.S. at 242 (holding that the intention of the drafts of the statute controls if the literal application of a statute would produce a result demonstrably at odds with the intention of the drafters and allowing the court to consider legislative history if a statute is ambiguous). The legislative history supports this Court's interpretation of § 362(c)(3)(A) because it is evident that the intent of the drafters was to terminate all protections of the automatic stay under this new subsection.

Section 302 of BAPCPA added §§ 362(c)(3) and 362(c)(4) to the Bankruptcy Code. See Pub. L. No. 109-8, § 302 (2005) (titled as "Discouraging Bad Faith Repeat Filings"). The legislative history indicates that this section amends § 362(c) "to terminate the automatic stay ...." H.R. Rep. No. 109-31(I), at 69-70 (2005). The legislative history does not distinguish between whether § 362(c)(3) effects a partial termination of the automatic stay, as opposed to the more clearly worded § 362(c)(4), but appears to indicate that the entire automatic stay terminates under both of these new subsections of § 362. See Paschal, 337 B.R. at 278 (noting that Congress intended § 362(c)(3) to terminate *all* protections of the automatic stay). It appears that Congress, in enacting bankruptcy reform, intended to close "loopholes and incentives that allow and- sometimes- even encourage opportunistic personal filings and abuse." H.R. Rep. No. 109-31(I), at 5 (2005). Congress clearly intended to make it more difficult for those debtors who engage in bad faith, successive filings in order to discourage such debtors from seeking relief in bankruptcy and to enjoy the protections afforded by Title 11. See id. If § 362(c)(3)(A) merely allowed creditors to badger the Debtor with phone calls or obtain property of the debtor that is not property of the estate, then this section would be of no value. A creditor's threat to collect would be hollow if the stay remained as to property of the estate because § 1306 broadly

incorporates nearly all of a debtor's valuable pre- and post-petition property.[11] To interpret § 362(c)(3) as allowing the stay to continue as to property of the estate would be contrary to the clear legislative history, do little to discourage bad faith, successive filings, and would create, rather than close, a loophole in the bankruptcy system by allowing these debtors to receive the principal benefit of the automatic stay- protection of property of the estate. See Moon, 339 B.R. at 672 (recognizing that its interpretation of § 362(c)(3) renders the section "virtually meaningless").

Based upon the foregoing, the Court finds that § 362(c)(3)(A) terminates the automatic stay as to Debtor and property of Debtor's estate. A contrary interpretation is demonstrably at odds with Congress's intent to deter bad faith, successive filings, fails to consider the context of § 362(c)(3) as a whole, and fails to account for the ambiguities in § 362(c)(3)(A). Therefore, the Court grants National City's Request. The automatic stay of § 362(a) does not protect the Property because the automatic stay was not extended pursuant to § 362(c)(3)(B).[12]

**AND IT IS SO ORDERED.**

UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina,
June 21, 2006

---

[11] Although, a debtor's exempt property may not be property of the debtor's estate and thus could be subject to collection under the majority's approach, the potential that the creditor may collect from this property is also meaningless because state law prohibits a creditor from satisfying any judgment it obtains against this property.

[12] Due to the importance of consistency in rendering significant decisions under BAPCPA, all bankruptcy judges in this District have reviewed and concur with this opinion.

12